**21 MAG 10689**

Approved: _____          **ORIGINAL**
          SARAH L. KUSHNER
          Assistant United States Attorney

Before:   THE HONORABLE SARAH L. CAVE
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :   SEALED COMPLAINT
                                 :   Violation of
     - v. -                      :   21 U.S.C. § 846
                                 :
LUIS FERNANDEZ,                  :
                                 :   COUNTIES OF OFFENSE:
            Defendant.           :   New York, BRONX
                                 :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          JACQUELINE L. MARADIAGA, being duly sworn, deposes and says that she is a Special Agent with the Drug Enforcement Administration, and charges as follows:

COUNT ONE
(Drug Trafficking Conspiracy)

          1.   From at least in or about 2020, through at least on or about November 4, 2021, in the Southern District of New York and elsewhere, LUIS FERNANDEZ, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

          2.   It was a part and an object of the conspiracy that LUIS FERNANDEZ, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

          3.   The controlled substance that LUIS FERNANDEZ, the defendant, conspired to distribute and possess with intent to distribute was a quantity of mixtures and substances containing a detectable amount of oxycodone, a Schedule II controlled

substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.  I am a Special Agent with the Drug Enforcement Administration (the "DEA"), and I have been personally involved in this investigation. This affidavit is based on my investigation, my conversations with other law enforcement agents and other individuals, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background

5.  Based on my training and experience and involvement in other opioid cases, I have learned, among other things, that medical providers who prescribe oxycodone—a Schedule II substance—are required to adhere to several regulations to ensure that the patient receiving an oxycodone prescription has a medically necessary reason for the drugs, and that the patient actually takes the medication, as opposed to selling or diverting it to illegal opioid markets.

6.  For example, a patient's urine must be routinely tested for the presence of oxycodone, so as to ensure that the patient is taking the drug him or herself as opposed to selling or diverting the drug to illicit use.

7.  Moreover, in New York State, with certain limited exceptions, no prescription for oxycodone shall be made that would exceed a 30-day supply if the substance were used in accordance with the directions for use, specified on the prescription. No additional prescriptions for a controlled substance may be issued by a practitioner to an ultimate user within 30 days of the date of any prescription previously issued unless and until the ultimate user has exhausted all but a seven days' supply of that controlled substance provided by any previously issued prescription.

## The Defendant Engaged In A Scheme To Illegally Distribute Oxycodone

8. Since in or about June 2021, I have participated in an investigation into suspected opioid diversion activity occurring at a medical practice (the "Practice") in the Bronx, New York. That investigation has involved a source of information ("SOI") working at the direction of law enforcement.[1] Based on my conversations with the SOI, I have learned, in substance and in part, the following: In or about 2020, LUIS FERNANDEZ, the defendant, approached the SOI and stated, in sum and substance, that FERNANDEZ was bringing purported patients ("Purported Patients") to a doctor (the "Doctor") at the Practice, and offered to bring the SOI to the Doctor. The SOI understood from FERNANDEZ that the goal was for FERNANDEZ to purchase from the Purported Patients any pills that the Doctor prescribed them.

9. Based on my participation in this investigation, including physical surveillance of LUIS FERNANDEZ, the defendant, and certain Purported Patients, my review of data obtained from New York State's Bureau of Narcotic Enforcement ("BNE"), phone records obtained pursuant to subpoenas and warrants, and GPS data obtained pursuant to a warrant for a car (the "Fernandez Vehicle") registered to FERNANDEZ, as well as my communications with the SOI and other law enforcement officers, I have learned, among other things, that FERNANDEZ is involved in a scheme to illegally distribute large quantities of oxycodone. In general, the scheme works as follows: FERNANDEZ picks up Purported Patients in the Bronx, New York, and in New York, New York, and takes them to the Doctor, who prescribes the Purported Patients oxycodone. FERNANDEZ then takes the Purported Patients to various pharmacies in New York City, including pharmacies located in New York, New

---

[1] From approximately in or about 2009, to in or about 2010, and then again from approximately in or about 2014, to in or about 2016, the SOI worked as a confidential source for the DEA, on matters unrelated to this investigation. In connection with the SOI's assistance from in or about 2009 to in or about 2010, the SOI received leniency in connection with a criminal case against him. In connection with the SOI's assistance from in or about 2014 to in or about 2016, the SOI was paid by the DEA. The SOI has not provided information or assistance to the DEA since in or about 2016. In or about June 2021, the SOI reached out to the DEA regarding the above-described conversation with FERNANDEZ. Although the SOI is not currently receiving any benefits from the DEA, the SOI understands that the SOI's current assistance may result in the DEA engaging the SOI as a confidential source and providing financial compensation in the future.

York, to fill those prescriptions. As noted above, based on my conversations with other law enforcement officers who have had conversations with the SOI, I believe that FERNANDEZ then buys the prescribed pills from the Purported Patients, for illegal distribution.

10. Based on my participation in this investigation, my conversations with law enforcement officers, my participation in the surveillance described below, and my review of phone records, I believe that LUIS FERNANDEZ, the defendant, in coordination with a Purported Patient, obtained oxycodone from the Doctor, in and around July 2021. In particular, I have learned the following, in substance and in part:

a. On or about July 6, 2021, at approximately 1:30 p.m., the Fernandez Vehicle was parked across the street from the Practice. A male individual was in the driver's seat.

b. At approximately 2:06 p.m., an individual ("Purported Patient-1") exited the Practice and got into the front passenger seat of the Fernandez Vehicle, at which point the Fernandez Vehicle drove away. I followed the Fernandez Vehicle.

c. At approximately 2:40 p.m., the Fernandez Vehicle dropped off Purported Patient-1 at a building ("Building-1") uptown in New York, New York.

d. Based on my review of records obtained from BNE, I have learned, among other things, that Building-1 is listed as the address for two Purported Patients, including Purported Patient-1, who have filled prescriptions issued by the Doctor for oxycodone.

e. Based on my review of phone records obtained pursuant to an administrative subpoena and toll records, I know that, on or about July 6, 2021, a phone number used by Fernandez (the "Fernandez Phone")[2] communicated at least two times with a

---

[2] Based on my conversations with other law enforcement officers, who have spoken with the SOI, I know, among other things, that FERNANDEZ gave the SOI the Fernandez Phone as his (FERNANDEZ's) phone number. In addition, in obtaining pedigree information from FERNANDEZ in connection with his arrest on or about November 4, 2021 (discussed below), I know that the number for the Fernandez Phone is the phone number that FERNANDEZ himself provided as his own number.

4

phone number that is associated with Purported Patient-1 in a public records database (the "Patient-1 Number").

f. Based on my review of BNE records, I have learned, among other things, that on or about July 6, 2021, a prescription was electronically submitted to a pharmacy by the Doctor for Purported Patient-1. On or about July 14, 2021, the pharmacy filled, and Purported Patient-1 picked up, that prescription.

g. Based on my review of phone records obtained pursuant to an administrative subpoena and toll records, I know that, on or about July 12, 2021, the Fernandez Phone communicated at least once with the Patient-1 Number, and that, on or about July 14, 2021 (the day the pharmacy filled and Purported Patient-1 picked up the prescription for oxycodone from the Doctor), the Fernandez Phone communicated at least two times with the Patient-1 Number.

11. Based on my participation in this investigation, my conversations with law enforcement officers, and my review of phone records and BNE records, I believe that LUIS FERNANDEZ, the defendant, in coordination with a Purported Patient, obtained oxycodone from the Doctor, in and around August 2021. In particular, I have learned the following, in substance and in part:

a. On or about August 11, 2021, the Doctor prescribed a purported patient ("Purported Patient-2") 90 oxycodone pills (30 milligrams each).[3]

b. On or about August 12, 2021, that prescription was filled by the pharmacy and picked up by Purported Patient-2.

c. On or about August 14, 2021, GPS location data for the Fernandez Phone showed that it was in the vicinity of an address on Wales Avenue in the Bronx, New York, where, based on my review of BNE records, I believe Purported Patient-2 resides. On or about that same date, the Fernandez Phone was in contact with a phone number that, based on my review of phone records obtained

---

[3] Based on my review of BNE records, I know, among other things, that this was not the first time that the Doctor prescribed oxycodone pills to Purported Patient-2. For example, on or about June 9, 2021, and on or about July 12, 2021, respectively, the Doctor prescribed Purported Patient-2 90 oxycodone pills (30 milligrams each); the June 9 prescription was filled on or about June 11, 2021, and the July 12 prescription was filled on or about July 13, 2021.

pursuant to an administrative subpoena, is subscribed to in the name of Purported Patient-2.

12. Based on discussions with other law enforcement officers and my own involvement in this investigation, I have learned, among other things, that on or about August 24, 2021, law enforcement officers observed LUIS FERNANDEZ, the defendant, driving the Fernandez Vehicle. Specifically, law enforcement officers observed FERNANDEZ driving in a way that, based on my training and experience, I know is consistent with targets conducting countersurveillance—for example, FERNANDEZ, in a several-block radius, made multiple brief stops and U-turns. At some point, FERNANDEZ parked the Fernandez Vehicle on the street. A few minutes later, another vehicle drove up nearby. FERNANDEZ approached the driver of that vehicle and the two of them engaged in a hand-to-hand exchange of a small unknown item.

13. On or about August 31, 2021, I personally observed (1) LUIS FERNANDEZ, the defendant, sitting in the driver's seat of the Fernandez Vehicle, which was parked in front of the Practice, and (2) an individual ("Purported Patient-3") exit the Practice and get into the Fernandez Vehicle. FERNANDEZ then drove Purported Patient-3 to a residential building in New York, New York ("Purported Patient-3's Address"). Based on my review of records obtained from BNE, I have learned, among other things, that the Doctor has prescribed oxycodone to an individual associated with that building. Specifically, based on my review of BNE records, I have learned, among other things, that on or about August 31, 2021, the Doctor wrote Purported Patient-3 a prescription for 120 oxycodone tablets, and that on or about September 4, 2021, that prescription was filled at a pharmacy in New York, New York.[4]

The November 4, 2021 Arrest Of The Defendant

14. Based on my review of footage from a pole camera located outside the Practice, I have learned, among other things, that on or about November 3, 2021, the Fernandez Vehicle was parked outside the Practice for approximately an hour and a half. At

---

[4] Based on my review of BNE records, I have learned, among other things, that the Doctor has been prescribing oxycodone to Purported Patient-3 since at least in or about August 2019. For example, between on or about August 8, 2019, and on or about June 1, 2021, the Doctor prescribed Purported Patient-3 a 30-day supply of oxycodone at least 23 times, ranging from 90 to 120 pills of 30 milligrams each.

some point during that period, Purported Patient-3 entered the Fernandez Vehicle, which then drove away.

15. On or about November 4, 2021, at approximately 12:11 p.m., I observed Purported Patient-3 enter a pharmacy where, based on BNE records, I know Purported Patient-3 fills Purported Patient-3's monthly oxycodone prescriptions. Shortly thereafter, I observed Purported Patient-3 exit the pharmacy. Based on my review of phone records obtained pursuant to an administrative subpoena and toll records, I know that at approximately 1:24 p.m. that day, the Fernandez Phone was in contact with a cellphone, which, based on publicly available records, is associated with Purported Patient-3's name. Later that day, I personally observed Purported Patient-3 leave the pharmacy and go to Purported Patient-3's Address.[5] Thereafter, at approximately 5:15 p.m., I personally observed Purported Patient-3 exit Purported Patient-3's Address and get into the Fernandez Vehicle. At approximately 5:28 p.m., I and other law enforcement agents stopped the Fernandez Vehicle and arrested LUIS FERNANDEZ, the defendant, who was in the driver's seat.

16. Based on my personal involvement in this investigation and my conversations with other law enforcement officers, I know that:

a. Approximately 119 oxycodone pills (30 milligrams each) were found on LUIS FERNANDEZ, the defendant, at the time of his arrest.

b. A search of the Fernandez Vehicle was conducted incident to the arrest. The following items, among other things, were recovered during the search of the Fernandez Vehicle: approximately 120 pills of oxycodone (20 milligrams each) and 120 pills of Percocet. The pills were in plastic baggies, not pill bottles.

---

[5] Purported Patient-3 made at least one stop to go grocery shopping between Purported Patient-3's trip home from the pharmacy.

WHEREFORE, I respectfully request that LUIS FERNANDEZ, the defendant, be imprisoned or bailed, as the case may be.

JACQUELINE L. MARADIAGA
Special Agent
Drug Enforcement Administration

Sworn to me through the transmission of this
Complaint by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this

3 day of November, 2021

THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK